HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OZONE INTERNATIONAL, LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WHEATSHEAF GROUP LIMITED, a foreign private limited company registered in England and Wales,<br><br>Defendant. | Case No. 2:19-cv-01108-RAJ<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction (Dkt. #3). Defendant opposes the Motion (Dkt. #9). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, the Court **DENIES** the motion.

## II. BACKGROUND

Plaintiff, Ozone International, LLC ("Ozone") is a Washington-based company that "developed an ozone machine that significantly extends the shelf life of food and beverage

products." Dkt. #3 at 2. In 2016, Ozone began discussions with Defendant, Wheatsheaf Group Ltd. ("Wheatsheaf"), a private limited company based in the United Kingdom, regarding Wheatsheaf's potential acquisition of Ozone. Dkt. #3 at 5. For the purposes of facilitating the deal, Ozone alleges that Wheatsheaf created two subsidiaries: Wheatsheaf Group US Inc. ("WGUS"), a Delaware corporation with a principal place of business in Minnesota, and Wheatsheaf Group US Food Safety LLC d/b/a TriStrata ("TriStrata"), a Delaware limited liability corporation based in Washington. Dkt. #3 at 7; Dkt. #1 ¶ 7. On August 17, 2017, Ozone entered into an Asset Purchase Agreement ("APA") (Dkt. #1-1, Ex. A) with TriStrata whereby TriStrata acquired a substantial number of Ozone's assets, excluding certain contracts ("the Excluded Contracts") which Ozone retained ownership over. Dkt. #3 at 6. Wheatsheaf (TriStrata's parent company) was also a party to the APA "solely for the purposes of Section 6.05 and any provisions of Article I, Article IX, and Article XI as they relate to Section 6.05." Dkt. #1-1, Ex. A. Section 6.05 provides: "Buyer has sufficient cash on hand or other sources of immediately available funds to enable Buyer to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement." *Id.* In addition to the APA, TriStrata and Ozone also entered into a Transition Services Agreement ("TSA") (Dkt. #1-1, Ex. B), providing for the transition of Ozone's business to TriStrata over a period of time. Dkt. #9 at 6. Wheatsheaf is not a party to the TSA. *Id.* at 10. Under section 4.02 of the TSA, TriStrata agreed to service the Excluded Contracts and, in exchange, Ozone agreed to pay TriStrata a service fee. Dkt. #1-1, Ex. B. The total purchase price ($9.9 million) included a $1.5 million reserve to allow Ozone to "pay TriStrata for its continued servicing of the Excluded Contracts under the TSA." Dkt. #9 at 7.

Following the close of the deal, Wheatsheaf alleges that TriStrata routinely invoiced Ozone for services provided under the TSA, however, after Ozone exhausted the $1.5 million reserve, it stopped paying the invoiced amounts. Dkt. #9 at 8. As of February 28, 2019, TriStrata alleges that Ozone has failed to pay up to $1,860,166.99 in invoices. Dkt.

# 9 at 8. On March 29, 2019 TriStrata brought suit against Ozone in King County Superior Court alleging breach of contract and requesting a declaratory judgment excusing TriStrata from further performance under the TSA due to Ozone's "material breach." Dkt. #10-1. Two months later, on May 31, 2019, TriStrata filed a petition for receivership in King County Superior Court. Dkt. # 10-2. Since filing for receivership, Ozone alleges that TriStrata has fallen behind on servicing the Excluded Contracts under the TSA. Dkt. #3 at 11. According to Ozone, it has received multiple complaints from customers regarding TriStrata's failure to service their ozone machines. *Id.* at 11-12. If left unchecked, Ozone contends that TriStrata's failure to service the ozone machines will have a "catastrophic effect on Ozone and the users of the North American food supply." *Id.* at 12.

On July 17, 2019, Ozone filed a complaint (Dkt. #1) alleging breach of contract, fraud, negligent representation, and alter ego claims along with a motion for a temporary restraining order ("TRO") and preliminary injunction (Dkt. # 3). Wheatsheaf opposes Ozone's motion (Dkt. #9).

## III. LEGAL STANDARD

A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). The standards for a preliminary injunction and temporary restraining order are "substantially identical." *Stuhlbarg Int'l Sales Co. V. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). To obtain injunctive relief, Ozone must show that (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009). "A preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All For The Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011). This is only appropriate as long as the plaintiff also

shows there is a likelihood of irreparable injury and that the injunction is in the public interest. *Id.*

## IV. DISCUSSION

Ozone asks the Court to issue a TRO or preliminary injunction forcing Wheatsheaf to either disregard its corporate form and collapse Wheatsheaf, WGUS, and TriStrata into one entity, or require Wheatsheaf to "make WGWA [TriStrata] solvent through equity without giving itself a preference over any of WGWA creditors." Dkt. #3 at 3-4.

In order to obtain injunctive relief, Ozone must first establish a likelihood of success on the merits. Here, Ozone contends that it insisted that Wheatsheaf be a party to section 6.05, in order to ensure that TriStrata had the financial backing to meet its obligations under the APA <u>and</u> the TSA. Dkt. #3 at 8. By failing to provide TriStrata with the necessary funds to enable it to continue servicing the Excluded Contracts under the TSA and allowing it to go into receivership, Ozone argues that Wheatsheaf has breached its obligations under the APA. *Id.* at 15.

Wheatsheaf, on the other hand, insists that it was only a party to the APA for the limited purpose of ensuring TriStrata had sufficient funds to consummate the closing and pay the Purchase Price and that its obligation did not extend to the TSA (to which it is <u>not</u> a party). Dkt. #9 at 11. Wheatsheaf notes that Section 6.05 is a representation and warranty, not a guarantee, and that it has already satisfied its obligation under the APA, when TriStrata paid the Purchase Price in full. *Id.* at 11-12. In addition, Wheatsheaf argues, even if TriStrata did have an obligation to service the Excluded Contracts, it is no longer required to continue servicing the Excluded Contracts in light of Ozone's material breach of the TSA. *Id.* at 12.

Under Washington law, if a party is in material breach of a contract, the other party may treat the breach as a condition excusing further performance. *Colorado Structures, Inc. v. Ins. Co. of the W.*, 161 Wash. 2d 577, 589 (2007). A material breach is one that "substantially defeats" a primary function of the agreement. *Park Ave. Condo. Owners*

*Ass'n v. Buchan Devs., LLC*, 117 Wash.App. 369, 383 (2003). Materiality is "dependent upon the circumstances of each particular case." *Jacks v. Blazer*, 39 Wash. 2d 277, 286 (1951). Here, TriStrata agreed to service the Excluded Contracts and, in exchange, Ozone agreed to pay a service fee within fifteen days of receipt of an invoice from TriStrata. Dkt. 1-1, Ex. B, TSA § 4.02. According to Wheatsheaf, Ozone has failed to pay up to $1,860,166.99 in invoices as of February 28, 2019. Dkt. # 9 at 8. Without these funds, TriStrata alleges that it is unable to cover its monthly costs, forcing it to file for receivership. *Id.* at 9. On the record before the Court, it seems likely that a jury would find Ozone's breach "material." *Jacks*, 39 Wash. 2d at 286 (holding a breach was material where the buyer failed to make advance payment on demand for lumber and the seller relied upon the disputed funds "to keep the mill in operation."). The Court finds that Ozone has failed to establish a likelihood of success on the merits of its claims because it is likely that Ozone materially breached its agreement with TriStrata.

Furthermore, even if Ozone could demonstrate a likelihood of success on the merits, it has failed to demonstrate that it will suffer irreparable harm. In order obtain an injunction, Ozone must show that it is likely to suffer irreparable harm – the mere possibility of irreparable harm is insufficient. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). In support of its request for injunctive relief, Ozone argues that if TriStrata fails, Ozone will potentially be in breach of approximately 250 of the Excluded Contracts and face "nearly limitless liability." Dkt. #3 at 23. But monetary damages alone do not establish irreparable harm. *See, e.g., Hughes v. United States*, 953 F.2d 531, 535-36 (9th Cir. 1992) (financial suffering and alleged due process violations insufficient to demonstrate irreparable injury); *Elias v. Connett*, 908 F.2d 521, 526 (9th Cir. 1990) (monetary harm alone insufficient to merit injunctive relief). In addition, courts are generally reluctant to grant the type of relief Ozone seeks on a motion for a temporary restraining order or preliminary injunction. *Great-W. Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210–11 (2002) ("[A]n injunction to compel the payment of money past due

under a contract, or specific performance of a past due monetary obligation, was not typically available in equity."); *Lombardo v. Prop. & Cas. Ins. Co. of Hartford*, 2017 WL 3710072, at *2 (D. Nev. Aug. 28, 2017) ("Courts sitting in equity generally do not issue preliminary injunctions to compel payments under a contract during the pendency of a case.").

Ozone also adds that the failure to grant injunctive relief will have a "catastrophic" effect on the North American food supply, noting that Ozone has the "only national field service team for ozone machines." Dkt. #3 at 12; Dkt. #4 ¶ 16, Brandt Decl.. However, Ozone provides little support for these allegations. For example, is Ozone the only entity capable of providing these food preservation systems such that without Ozone, the United States' food supply would be in jeopardy? Ozone also fails to provide evidence regarding the likelihood or immediacy of the alleged harm. Ozone has known of TriStrata's receivership since May 2019 and received customer complaints as early as June 10, 2019. Dkt. #3 at 11-12. When is the "catastrophic" harm to the United States' food supply expected to take effect? Conclusory or speculative allegations are not enough to establish a likelihood of irreparable harm. *Herb Reed Enters., LLC v. Florida Entm't Mgmt*., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013); *see also Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction."); *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985) (finding irreparable harm not established by statements that "are conclusory and without sufficient support in facts"). Ozone's speculative allegations, without more, are insufficient to state irreparable harm.

Finally, the balance of equities weighs against granting injunctive relief. As noted above, Plaintiff knew that TriStrata entered receivership on May 31, 2019 and began receiving complaints from customers regarding TriStrata's failure to service their ozone machines as early as June 10, 2019. Dkt. #3 at 11-12. There is nothing before the Court to suggest that Plaintiff could not have sought relief by a motion for a preliminary

injunction at an earlier date rather than seeking relief now by way of a temporary restraining order. *See Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("A delay in seeking a preliminary injunction is a factor to be considered in weighing the propriety of relief."); *Dahl v. Swift Distrib., Inc.*, 2010 WL 1458957, at *4 (C.D. Cal. 2010) (finding that eighteen-day delay in filing TRO application "implie[d] a lack of urgency and irreparable harm"). Indeed, Wheatsheaf alleges that Ozone filed this Motion immediately following an unsuccessful mediation session between the parties. Dkt. #9 at 16. The Court will not tolerate TRO engagement for the sole purpose of obtaining a tactical advantage. Having reviewed the motion, complaint, submissions of parties, and applicable law, the Court concludes that Ozone has not carried its burden to warrant injunctive relief.

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion. Dkt. # 3.

DATED this 22nd day of July, 2019.

The Honorable Richard A. Jones
United States District Judge