HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| OZONE INTERNATIONAL, LLC, a Washington limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>WHEATSHEAF GROUP LIMITED, a foreign private limited company registered in England and Wales,<br><br>Defendant. | Case No. 2:19-cv-01108-RAJ<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

This matter is the Court on Defendant's motion for partial summary judgment. Dkt. # 21. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons stated below, the Court **DENIES** the motion without prejudice.

## I. BACKGROUND

Plaintiff, Ozone International, LLC ("Ozone") is a Washington-based company that developed an ozone machine that significantly extends the shelf life of food and

ORDER – 1

beverage products.  Dkt. # 4 at ¶ 1.  In 2016, Ozone began discussions with Defendant, Wheatsheaf Group Ltd. ("Wheatsheaf"), a private limited company based in the United Kingdom, regarding Wheatsheaf's potential acquisition of Ozone.  *Id.* at ¶ 3.  For the purposes of facilitating the deal, Wheatsheaf created two subsidiaries: Wheatsheaf Group US Inc. ("WGUS"), a Delaware corporation with a principal place of business in Minnesota, and Wheatsheaf Group US Food Safety LLC d/b/a TriStrata ("TriStrata"), a Delaware limited liability corporation based in Washington.  Dkt. # 4, Ex. F.

On August 17, 2017, Ozone entered into an Asset Purchase Agreement ("APA") with TriStrata whereby TriStrata acquired a substantial number of Ozone's assets, excluding certain contracts ("the Excluded Contracts") which Ozone retained ownership over.  Dkt. #1-1, Ex. A.  Wheatsheaf (TriStrata's parent company) was also a party to the APA "solely for the purposes of Section 6.05 and any provisions of Article I, Article IX, and Article XI as they relate to Section 6.05."  *Id.*  Section 6.05 provides: "Buyer has sufficient cash on hand or other sources of immediately available funds to enable Buyer to make payment of the Purchase Price and consummate the transactions contemplated by this Agreement."  *Id.*  Later in Section 6.07 of the APA, TriStrata represented that it would "be able to pay its debts as they become due" and that "[i]n connection with the transactions contemplated hereby, Buyer has not incurred, and has no plans to incur, debts beyond its ability to pay as they become absolute and matured."  *Id.*

In addition to the APA, TriStrata and Ozone also entered into a Transition Services Agreement ("TSA"), providing for the transition of Ozone's business to TriStrata over a period of time.  Dkt. #1-1, Ex. B.  Under Section 3.04 of the TSA, TriStrata agreed to pay a "Transfer Price" for any Excluded Contract where the customer entered into a new contract with TriStrata.  Dkt. #1-1, Ex. B.  The parties also agreed to cooperate in good faith to set a Transfer Price for the contracts.  *Id.*  Customer contracts began to transfer from Ozone to TriStrata in January 2018 and since then 25 contracts have transferred to TriStrata.  Dkt. # 26 at ¶ 1.  However, the parties have not yet

ORDER – 2

negotiated a final Transfer Price for any of the contracts and TriStrata has not paid for any of the contracts. *Id.*

During the transfer process, TriStrata also agreed to service the Excluded Contracts and, in exchange, Ozone agreed to pay TriStrata a service fee. Dkt. #1-1, Ex. B, § 4.02. The total purchase price ($9.9 million) included a $1.5 million reserve to allow Ozone to pay TriStrata for its continued servicing of the Excluded Contracts under the TSA. Dkt. # 11 at ¶ 12. Ozone maintains that the parties understood that the funds for Ozone to continue operating would come from the Transfer Price payments. Dkt. # 26 at ¶ 1. Following the close of the deal, Wheatsheaf routinely invoiced Ozone for services provided under the TSA, however, after Ozone exhausted the $1.5 million reserve, it stopped paying the invoiced amounts. Dkt. # 11 at ¶ 14. According to Ozone, this is because TriStrata has not paid Ozone any of the Transfer Price payments it owes for the 25 transferred contracts and it has been forced to offset this amount under Section 4.07 of the TSA. Dkt. # 26 at ¶ 1.

On March 29, 2019 TriStrata sued Ozone in King County Superior Court alleging breach of contract and requesting a declaratory judgment excusing TriStrata from further performance under the TSA due to Ozone's "material breach." Dkt. # 26 at ¶ 4. Two months later, on May 31, 2019, TriStrata filed a petition for receivership in King County Superior Court. Dkt. # 26 at ¶ 6. On July 17, 2019, Ozone filed the instant complaint (Dkt. #1) alleging claims for breach of contract, fraud, negligent representation, and requesting declaratory judgment that Wheatsheaf is an alter ego of TriStrata, along with a motion for a temporary restraining order ("TRO") and preliminary injunction (Dkt. # 3). On July 22, 2019, the Court denied Ozone's motion for a temporary restraining order. Dkt. # 13. Wheatsheaf now moves for partial summary judgment as to all of Ozone's claims and Wheatsheaf's first counterclaim. Dkt. # 21.

## II.   LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material

ORDER – 3

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### III.  DISCUSSION

Wheatsheaf asserts two independent grounds for summary judgment: (1) Section 6.05 of the APA does not require Wheatsheaf to guarantee or fund TriStrata's ongoing performance under the TSA, and (2) Ozone materially breached the TSA, relieving TriStrata and Wheatsheaf of further performance.[1] Ozone argues that the existence of material factual disputes precludes summary judgment. In the event the Court does not deny the motion outright, Ozone asks that the Court deny the motion without prejudice under Fed. R. Civ. P. 56(d) and allow the parties to engage in discovery.

---

[1] Wheatsheaf also argues that Ozone's final claim, declaratory judgment of Wheatsheaf's alter ego status, is not an independent cause of action and must be dismissed as a matter of law. However, because this argument was raised for the first time in Wheatsheaf's reply brief, the Court will not consider it. *United States v. Boyce*, 148 F.Supp.2d 1069, 1085 (2001) (holding that "it is improper for a party to raise a new argument in a reply brief[,]" largely because the opposing party may be deprived of an opportunity to respond.).

ORDER – 4

The Court agrees that Wheatsheaf's motion is premature. Although courts have "discretion to disallow discovery when the non-moving party cannot yet submit evidence supporting its opposition, the Supreme Court has restated the rule as requiring, rather than merely permitting, discovery 'where the nonmoving party has not had the opportunity to discover information that is essential to its opposition.' " *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 846 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 n. 5 (1986)). In this case, Wheatsheaf brought the instant motion less than two months after Ozone filed suit and before Ozone had the opportunity to obtain *any* discovery in this action. Dkt. # 25 at ¶ 4. And while Wheatsheaf's motion is technically permissible under the federal rules, Ninth Circuit precedent counsels against granting such motions if the party opposing summary judgment has not had an opportunity to pursue discovery. "Where . . . a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56 [(d)] motion fairly freely." *Burlington N. Santa Fe R.R. Co. v. Assiniboine & Sioux Tribes of Fort Peck Reservation*, 323 F.3d 767, 773 (9th Cir. 2003).

To obtain a continuance under Rule 56(d), the nonmoving party must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition. The declaration must be timely and specifically identify relevant information where there is some basis for believing the information sought actually exists. *Emp'rs Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox*, 353 F.3d 1125, 1129 (9th Cir. 2004). If a court concludes additional discovery is warranted, it may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

Here, Ozone meets the requirements for relief under Rule 56(d). First, Ozone's request was timely submitted in its opposition to Wheatsheaf's summary judgment

ORDER – 5

motion. In support of its request, Ozone submits the accompanying declaration of its counsel, James Morrison. *See* Dkt. # 25. Mr. Morrison's declaration identifies with adequate specificity several areas in which the requested discovery is relevant to matters at issue in the summary judgment motion. For example, Ozone contends that discovery may yield evidence regarding "the amounts owed by TriStrata to Wheatsheaf under the Transfer Price" as well as information related to Ozone's declaratory judgment alter ego claim and context of the parties' negotiations of the APA and TSA. *See* Dkt. # 25.

Wheatsheaf argues that discovery will not aid Ozone in opposing its motion for partial summary judgment because construction of Section 6.05 is a "pure legal question" and "all facts necessary to conclude Ozone materially breached the TSA" are undisputed and in Ozone's possession. Dkt. # 27 at 14. However, contract interpretation is not a "pure legal question" if a contract provision is subject to multiple reasonable interpretations. *See Hall v. Custom Craft Fixtures, Inc*., 87 Wash. App. 1, 10, 937 P.2d 1143 (1997) ("Summary judgment is not proper if the parties' written contract, viewed in light of the parties' other objective manifestations, has two or more reasonable but competing meanings."). Likewise, the "materiality" of any alleged breach is a question of fact and, contrary to Wheatsheaf's representation, it is not clear to the Court that the facts regarding Ozone's alleged material breach are "undisputed." *See Bailie Commc'ns, Ltd. v. Trend Bus. Sys.,* 53 Wash. App. 77, 82 (1988).

Even if a dispute of material fact is not readily apparent from this limited factual record—a conclusion the Court declines to reach at this stage—summary judgment in Wheatsheaf's favor is inappropriate given that Ozone has had no opportunity to engage in discovery and develop its theory of the case. *See Burlington*, 323 F.3d at 774 ("[T]he party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid."). Accordingly, the Court GRANTS Ozone's Rule 56(d) request for additional discovery and denies Wheatsheaf's motion for partial

ORDER – 6

summary judgment without prejudice to refiling after the parties have engaged in a reasonable amount of discovery. *See Burlington Northern*, 323 F.3d at 773–74.

As a final matter, the Court notes that it appears the parties did not meet and confer prior to the filing of this motion. *See* Dkt. # 24 at 4. This is unacceptable. The meet and confer requirement is clearly articulated in the Court's standing order. *See* Dkt. # 14 at 4. It is a requirement, not a suggestion. Although the Court declines to strike Wheatsheaf's motion on this basis, the Court will not hesitate to do so in the future.

## IV.  CONCLUSION

For the above reasons, Defendant's motion for partial summary judgment is **DENIED without prejudice**. Dkt. # 21. Defendant's motion to stay discovery is **DENIED** as moot. Dkt. # 30.

DATED this 6th day of May, 2020.

_____

The Honorable Richard A. Jones
United States District Judge

ORDER – 7